**FILED**
**Feb 28, 2019**
**9:05 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Terrance Garcia Glenn | ) Docket No. 2017-06-0584 |
| | ) |
| v. | ) State File No. 48175-2016 |
| | ) |
| Sears Outlet Store, LLC, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Kenneth M. Switzer, Chief Judge | ) |

---

### Affirmed and Remanded - Filed February 28, 2019

---

The employee, an appliance salesman, alleged suffering work-related injuries to his neck, back, and wrist when a refrigerator he was moving tipped and hit his head. The employer initially denied the claim, but later authorized medical treatment before eventually discontinuing benefits, resulting in the employee filing a petition requesting medical care and temporary disability benefits. Following an expedited hearing, the trial court determined the employee presented sufficient evidence to establish he would likely prevail at trial and ordered the employer to provide medical and temporary disability benefits. The employer has appealed. We affirm the trial court's decision and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Anthony M. Noel and Carolina V. Martin, Nashville, Tennessee, for the employer-appellant, Sears Outlet Store, LLC

Terrance Garcia Glenn, Cane Ridge, Tennessee, employee-appellee, pro-se

### Factual and Procedural Background

Terrance Garcia Glenn ("Employee") was working as an appliance salesman for Sears Outlet Store, LLC ("Employer") on May 4, 2016, when he alleged suffering

injuries when a refrigerator he was moving tipped over and hit his head.[1]  Employee contends that approximately two hours after selling the refrigerator, it had not been loaded onto the customer's truck.  Because the customer had threatened to cancel the order if the refrigerator was not promptly loaded, Employee attempted to move it to the loading area.  He asserts that, in the process, the wheels on the refrigerator came into contact with debris on the floor and the refrigerator tipped backwards, striking him on his head and causing him to fall to the floor, allegedly causing his injuries.  It is unclear from the record whether the refrigerator fell to the floor or merely tilted to the point it made contact with Employee's head.

In a written statement submitted with Employee's request for an expedited hearing, Employee states that he "cracked his wrist because [he] tried to[] catch a big Subzero refrigerator . . . that pulverized [his] . . . body."  At the expedited hearing, Employee testified he grabbed the handles of the refrigerator "to sprint off with it" and "bam," the refrigerator "hit[] on top of my head.  I go back and fall back to the floor," after which Employee testified he "pushed it on over to the dock."

Employee testified he reported the injury to the assistant store manager, Angie Harris, and a co-worker.  According to Employee, he told Ms. Harris "I need to fill out an injury report.  Something [sic] wrong with my neck and stuff.  I'm hurt really, really bad."  He acknowledged he never reported the injury in writing.  Ms. Harris testified that she was not present at the time of the alleged incident and that Employee never reported a work-related injury to her.  When asked whether Employee sent her anything around the date of the alleged incident, she stated "in June he sent – I think it was June 15th, he sent a text message saying that he hurt hisself [sic] looking at the camera in the building.  I don't know.  Something like that."   On cross-examination, Employee asked Ms. Harris whether he sent her a document on May 5, 2016, telling her that he "had broken [his] neck from that refrigerator."  She testified she "found a document," "[j]ust like something from, like, a sprain or something, showing a strain or something.  But it didn't say where it come [sic] from."

Employee testified he woke up on May 5, 2016, experiencing severe neck pain and went to an emergency room for treatment.[2]  While it is unclear from the record when Employer provided Employee a panel of physicians, Employer ultimately did so, and Employee chose Dr. James Fish, with whom he had already been treating, as his authorized physician.  The first office note from Dr. Fish in the record is for a March 15, 2017 visit, more than ten months after the alleged incident and prior to Employee's selection of Dr. Fish from the panel.  Dr. Fish's report of the March 2017 visit indicated

---

[1] Employee initially identified the incident as occurring on May 2, 2016.  After sales records indicated he did not sell any refrigerators on May 2, but that he did sell a refrigerator on May 4, he alleged a May 4, 2016 date of injury.

[2] The record on appeal does not include records of a May 5, 2016 visit to an emergency department.

Employee was returning for a scheduled follow-up for low back pain that had been present for one year and was progressive. It noted "parasthesias in the bilateral legs" that did not follow specific dermatomal patterns and stated that Employee "also had an [anterior cervical discectomy and fusion] C4-C6 previously and has improved significantly." According to the report, Employee reported a variety of symptoms that had begun ten months earlier, including difficulty walking and right leg weakness. Dr. Fish ordered a lumbar MRI and referred Employee for a lumbar epidural steroid injection.

Approximately two weeks later, Employee filed a petition for medical and temporary disability benefits, followed by a request for an expedited hearing. In an order addressing a November 20, 2017 status conference, the trial court noted that Employee had selected Dr. Fish as his treating physician, and that Employee's first visit since selecting Dr. Fish "will take place on November 20." The order stated that "Dr. Fish must evaluate and treat [Employee] before the claim can move forward."

The report of Employee's November 20, 2017 visit with Dr. Fish stated that Employee had "a myriad of complaints," including neck pain, mid-back pain, and low back pain "going into the bilateral lower extremities." The report again noted the earlier cervical fusion "in October of 2016," indicating Employee "has done well." The report indicated that the lumbar MRI Dr. Fish previously ordered revealed degenerative disc disease. Dr. Fish made a referral for pain management for evaluation and treatment of Employee's cervical and lumbar spine. However, Employer did not provide Employee a panel of pain management physicians or arrange for Employee to be evaluated by a pain management physician.

In January 2018, Dr. Fish responded to a letter from Employer's workers' compensation administrator, which requested the doctor answer questions concerning Employee's diagnosis and prognosis. The letter also asked whether Employee's condition was causally related to his employment. It is unclear which questions some of the handwritten responses were intended to address. Following a question concerning Employee's diagnosis, Dr. Fish wrote "coccydynia and lumbar hnp," noting that the clinical finding supporting the diagnoses was "MRI [lumbar] spine." Beside a series of questions concerning causation, Dr. Fish wrote "TBD [to be determined]" and noted that Employee had a herniated disc at L5-S1. The letter questioned whether further care was necessary "with regards to any part of the current condition that is related to his employment," and further requested, "[i]f so, please provide your specific recommendations." Beside these questions Dr. Fish wrote "coccygeal injection [and] lumbar ESI [epidural steroid injection]," which was followed by an arrow pointing to language stating "if coccydynia will cease treatment" and "if hnp will continue [treatment]." Finally, the letter asked about Dr. Fish's recommendations for ongoing work and activity restrictions "directly necessary for any part of his ongoing injury deemed work related." Dr. Fish wrote "light duty at this time."

On April 20, 2018, apparently at Employee's request, Dr. Fish sent a handwritten note to the trial court stating "[p]atient sustained work related injuries to his cervical and lumbar spine[.] He is still under my care for those issues."

Employee was next seen by Dr. Fish on August 8, 2018, and he complained of continued neck pain and low back pain. The report of the August 8 visit included the following:

Patient has relayed to me throughout the course of our care for him that all of his neck and back issues stem from the work injury in May of 2016. He had [two] significant disc herniations with cervical radiculopathy which necessitated surgical intervention. It is very feasible that a refrigerator falling on an individual directly on the head could result in disc herniations. Patient also has a disc herniation at L5-S1 [in] his lumbar spine which again could be due to a fall such as the one he describes. If there is no history of neck or back treatment prior [to] 2016 that [sic] I would have the opinion that the work related injury caused his cervical and lumbar issues.

. . . .

He relays to me that on May 4, 2016 he was helping to move a commercial grade refrigerator when the dolly slipped and the refrigerator fell back on top of him hitting his head and neck, driving his body to the floor. He has since then had significant neck pain and low back pain. . . . [H]e denies a history of neck or back pain prior to the work related injury in 2016.

The August 8, 2018 report also noted Dr. Fish's referral of Employee to Dr. John Schneider for pain management. While the record includes correspondence indicating Employee was seen by Dr. Schneider, no reports of Employee's treatment with Dr. Schneider or any other pain management specialist were considered by the trial judge.[3]

In its November 27, 2018 order, the trial court determined Employee presented sufficient evidence to establish he would likely prevail at a hearing on the merits and ordered Employer to provide treatment with Dr. Schneider. The court also ordered Employer to file a wage statement so the court could calculate the correct compensation rate and issue an order for temporary disability benefits. Employer has appealed.

---

[3] Subsequent to the entry of the trial court's expedited hearing order, Employee filed documents with the trial court that were included in the record on appeal. We remanded the case for the trial judge to resolve any dispute concerning the contents of the record, and the trial court subsequently entered an order stating the court did not consider the documents submitted by Employee subsequent to the entry of the court's order awarding benefits. Accordingly, we will not consider those documents on appeal. *See Hadzic v. Averitt Express*, No. 2014-02-0064, 2015 TN Wrk. Comp. App. Bd. LEXIS 14, at *13 n.4 (Tenn. Workers' Comp. App. Bd. May 18, 2015).

4

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the judge. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

## Analysis

Employer contends the trial court erred in three respects: (1) in "deeming May 4, 2016 the correct date of injury"; (2) in concluding that Employer had actual notice of the alleged injury; and (3) in determining Employee would likely prevail at trial in establishing causation.

### *Date of Injury*

Employee's petition for benefits identified May 2 as the date of injury in one location and May 4 in another. Employee testified the incident occurred on May 4. He was cross-examined extensively as to the date of the accident and the dates on documents that were either submitted to or issued by the Bureau of Workers' Compensation ("Bureau"). Employee testified he did not complete the petition for benefits, but that personnel in the Bureau filled out the petition. The trial court noted that Employee's petition indicated it was completed by Bureau personnel. Employer asserts that Employee "had numerous opportunities to correct the mistake [in the documents] and provide the correct date of injury," and that only after documentary evidence established that Employee made no sales on May 2 did he "change[] his story during the Expedited Hearing and allege[] the actual date of injury was May 4, 2016." The trial court concluded, "based on [Employee's] testimony, . . . the date of injury [was] May 4, 2016."

When the trial judge has seen and heard the witnesses, we give considerable deference to the court's credibility and factual determinations. *See Tryon v. Saturn*

*Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). Moreover, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7). Based on our review of the record, we cannot conclude the evidence preponderates against the trial court's finding that the incident occurred on May 4, 2016. Accordingly, we find no merit in Employer's first issue.

*Notice*

Employee acknowledged he never provided Employer written notice of his injury. However, he testified that immediately after the accident he told the assistant store manager, Angie Harris, he was hurt and "I need to fill out an injury report." By contrast, Ms. Harris testified Employee never reported an injury to her, and she disputed Employee's assertion that she was present when the injury occurred. When asked whether Employee sent her "anything around the date of injury for this claim, early May," she responded, "no," but added that "in June he sent – I think it was June 15th, he sent a text saying that he hurt hisself [sic] looking at the cameras in his building," or "[s]omething like that." On cross-examination, Employee asked Ms. Harris whether she received a document he sent to her telling her that he "had broken [his] neck from that refrigerator." She said she found a document, stating "it did not say what that document was for. Just like something from, like, a sprain or something, showing a strain or something."

The trial court found Employee's testimony on the notice issue to be more credible, stating "[o]verall, he described the day's event in greater detail." The trial court concluded that Employer "had actual notice of the accident immediately after it happened."

Employer asserts that the June 15 text message Ms. Harris received from Employee was late and that, "[d]ue to this late notice, [Employer] was not afforded the opportunity to conduct an investigation while evidence, such as camera footage, was still available." Stating it is important that Employer "offered no evidence regarding its use of worksite cameras or of any prejudice it suffered as a result of the alleged delay," the trial court concluded it need not consider whether Employer was prejudiced by the late notice because the court concluded Employer "had actual notice" of the injury.

Our review of the trial court's assessment of in-court testimony is not without limits. "When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are uniquely positioned to observe the demeanor and conduct of witnesses." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citation and internal quotation marks omitted). Our review of the record here does not disclose

6

sufficient evidence from which we can conclude that the trial court's assessment of the witnesses' credibility was erroneous. Thus, we find no merit in Employer's second issue.

*Causation*

Employer's final issue concerns whether there is sufficient evidence to conclude Employee will likely prevail at a hearing on the merits in establishing the compensability of his claim. Although the issue is close, we conclude the evidence does not preponderate against the trial court's determination at this interlocutory stage of the case. The documentary evidence included Dr. Fish's handwritten responses to the January 2018 letter from Employer's workers' compensation administrator, which questioned Employee's diagnosis, prognosis, work and activity restrictions, and causation. Although it is unclear precisely which questions some of Dr. Fish's responses were intended to address, the trial court interpreted Dr. Fish's response to the question concerning whether Employee's condition was causally related to his employment to mean it was "to be determined." However, in a subsequent handwritten note signed by Dr. Fish and sent to the Bureau on April 20, 2018, Dr. Fish stated that Employee "sustained work related injuries to his cervical and lumbar spine." The note also stated that Employee was "still under [Dr. Fish's] care for those issues."

The report of Employee's August 2018 visit with Dr. Fish included the doctor's observation that Employee had relayed to him throughout the course of Dr. Fish's treatment "that all of [Employee's] neck and back issues stem from the work injury in May of 2016." This report noted that Employee "had [two] significant disc herniations with cervical radiculopathy which necessitated surgical intervention." Further, the report stated "[i]t is very feasible that a refrigerator falling on an individual directly on the head could result in disc herniations," adding that Employee "also has a disc herniation at L5-S1 . . . which again could be due to a fall such as the one he describes." Finally, the report stated that "[i]f there is no history of neck or back treatment prior [to] 2016," then Dr. Fish "would have the opinion that the work related injury caused his cervical and lumbar issues."

Employee denied a history of neck or back pain before the May 2016 work injury. However, on cross-examination, Employer questioned Employee concerning medical records that pre-dated the May 2016 incident in which Employee had reported cervical and low back symptoms. Contending that Dr. Fish's causation opinion was dependent on Employee's not having a history of neck or back treatment prior to the May 2016 incident, Employer asserts that Employee's acknowledgment of medical visits prior to the May 2016 accident in which he noted cervical and low back pain rendered Dr. Fish's opinion insufficient to support the trial court's determination that Employee would likely prevail at trial in establishing causation.

7

An injured worker has the burden of proof on every essential element of his or her claim. *See* Tenn. Code Ann. § 50-6-239(c)(6); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). However, an employee can meet this burden at an expedited hearing by presenting sufficient evidence from which the trial court can determine that the injured employee would likely prevail at a hearing on the merits, consistent with Tennessee Code Annotated section 50-6-239(d)(1). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6. There is a "presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7). Importantly, a doctor need not couch a medical opinion "in a rigid recitation of the statutory definition," but, instead, must include "sufficient proof from which the trial court can conclude that the statutory requirements of an injury as defined in section 50-6-102(14) are satisfied." *Panzarella v. Amazon.com, Inc.*, No. 2015-01-0383, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (Tenn. Workers' Comp. App. Bd. May 15, 2017).

Here, Dr. Fish indicated in January 2018 that causation was "to be determined." His April 20, 2018 note stated that Employee "sustained work related injuries to his cervical and lumbar spine." In the August 8, 2018 report, Dr. Fish noted that Employee had relayed to him throughout the course of his treatment that Employee's "issues stem from the work injury." The trial court noted that Dr. Fish's reports included "a description of the mechanism of injury that resemble[d] [Employee's] testimony." Dr. Fish noted in the August 2018 report that Employee had significant cervical herniations that necessitated surgery, adding that "[i]t is very feasible a refrigerator falling on an individual directly on the head could result in disc herniations." Dr. Fish also noted the lumbar disc herniation "could be due to a fall such as the one [Employee] describe[d]." Finally, Dr. Fish stated that "[i]f there is no history of neck or back treatment prior [to] 2016," he "would have the opinion that the work related injury caused [Employee's] cervical and lumbar issues." While this evidence falls short of what would be required at trial to establish causation, we cannot conclude at this interlocutory stage that the evidence preponderates against the trial court's determination that Employee "would likely prevail at a hearing on the merits." Tenn. Code Ann. § 50-6-239(d)(1).

In reaching this conclusion, we are not unmindful of Employer's argument that Employee's medical records establish a history of pre-injury evaluations for neck and back complaints. Employer cross-examined Employee concerning medical records that predated the May 4, 2016 work incident and in which Employee complained of cervical

and low back issues. However, those medical records were not admitted into evidence, prompting the trial court to note that it could not consider these records "in their entirety." Moreover, the trial court found Employee's explanation that the previous problems were "muscular rather than skeletal" to be "plausible." In light of the trial court's determinations regarding the credibility of the testimony, and in the absence of documentary evidence to the contrary, we cannot conclude that the preponderance of the evidence addressing causation is otherwise than determined by the trial court.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case.